IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| TYRIS HARVEY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:14-cv-00124 |
| | ) | Senior Judge Haynes |
| v. | ) | |
| | ) | |
| JASPER BREWSTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

Plaintiff, Tyris Harvey, an inmate at South Central Correctional Facility ("SCCF"), filed this action under 42 U.S.C. § 1983 against the Defendants: Corrections Corporation of America ("CCA"), and Jasper Brewster, D.D.S., a contract dentist for SCCF. (Docket Entry No. 45 at ¶ 3). Plaintiff alleges that the Defendants acted with deliberate indifference by not providing him adequate dental care.

Before the Court is the Defendants' motion for summary judgment (Docket Entry No. 43) with proof of Plaintiff's medical and dental care. Plaintiff filed a response (Docket Entry No. 49), but does not dispute the facts submitted by the Defendants.

**A. Findings of Fact**

According to the undisputed facts, on March 26, 2013, Defendant Brewster removed Plaintiff's top two wisdom teeth without any complications or problems. (Docket Entry No. 45 at ¶ 4). After the procedure was concluded, Defendant Brewster instructed Plaintiff on future care for his mouth. Id. at ¶ 5. Defendant Brewster also prescribed Ibuprofen for any post-procedure pain. Two days later, a nurse at SCCF examined Plaintiff at Plaintiff's request. During this visit, Plaintiff complained of a "raw area" to his groin and "fungus." Id. at ¶ 6. Plaintiff did not have any

complaints about his mouth. Id. The nurse provided cream for Plaintiff's "raw area." Id.

On June 3, 2013, Plaintiff filed a sick call request and a nurse examined Plaintiff for Plaintiff's complaints of mouth and neck pain. Id. at ¶ 7. Plaintiff stated that Defendant Brewster broke one of his teeth while extracting his wisdom teeth. Id. The nurse scheduled Plaintiff for an emergency appointment with Defendant Brewster two days later. Id. In the interim, the nurse prescribed Ibuprofen to treat Plaintiff's pain. Id.

On June 5, 2013, Defendant Brewster examined Plaintiff and discovered that Plaintiff's mouth had not healed properly. Id. at ¶ 9. Defendant Brewster attributed this condition to Plaintiff failing to follow Defendant Brewster's post-care instructions. Id. Defendant Brewster did not observe any break in Plaintiff's teeth, but observed exposed bone that is normal after a wisdom tooth extraction. Id. Defendant Brewster applied dry socket paste to the open sockets where Plaintiff's wisdom teeth had been extracted. Id. at ¶ 10. Dry socket paste kills any infections, numbs the applied area and assists in healing the empty sockets. Id. After the treatment, Plaintiff did not complain about Defendant Brewster. Id.

On September 5, 2013, based on Plaintiff's sick call request, a nurse treated Plaintiff at SCCF's medical clinic. Id. at ¶ 11. Plaintiff's complaint was a "jock itch" and wrist pain, but not any complaint about his teeth or mouth. Id. The nurse prescribed Ibuprofen for Plaintiff's pain and medicinal cream for his itch. Id.

Plaintiff's next sick call was December 30, 2013, when Plaintiff complained, for the first time since June 5, 2013, of pain and discomfort in his mouth. Id. at ¶ 12. Plaintiff cited pain in his upper right tooth. Id. Plaintiff was prescribed Ibuprofen for his pain and the nurse scheduled Plaintiff to see Defendant Brewster on January 4, 2014. Defendant Brewster examined Plaintiff on January

2

4, 2014 and found that one of Plaintiff's top right molars was heavily decayed requiring extraction. Id. at ¶ 14. This decay was unrelated to the May 26, 2013 extraction of Plaintiff's wisdom teeth. Id. The molar would cause pain, but was neither a life-threatening nor a serious medical condition. Id. Defendant Brewster prescribed Ibuprofen for Plaintiff's pain and scheduled Plaintiff's tooth extraction for February 18, 2014. Defendant Brewster extracted Plaintiff's decayed molar on February 18, 2014. After the procedure, Plaintiff did not have complaints about Defendant Brewster.

### B. Conclusions of Law

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law</u>

<u>will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex</u>, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). <u>But</u> <u>see</u> <u>Routman</u>, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in <u>Celotex</u>:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323.

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards . . . ." <u>Martin v. Kelley</u>, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. <u>Sims v. Memphis Processors, Inc.</u>, 926 F.2d 524, 526 (6th Cir. 1991) (quoting <u>Kochins v.</u>

4

Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex, 477 U.S. at 323; Fed. R. Civ. P. 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and] . . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby, 477 U.S. at 257). Moreover, the Court of Appeals explained that

> [t]he respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted); see also Hutt v. Gibson Fiber Glass Prods., Inc., 914 F.2d 790, 792 (6th Cir. 1990) (quoting Liberty Lobby, 477 U.S. at 251-52) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'").

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law:

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.</u>

\* \* \*

Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that

[i]n ruling on motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.

It has been stated that: "The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute . . . ."

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citations omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) (citation omitted).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire

6

record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New International Dictionary (1986).

Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). In this district, the parties must provide specific references to the proof upon which they rely. See Local Rule 56.01(c) (requiring each party to provide a statement of undisputed facts to which the opposing party must respond).

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

   1. Complex cases are not necessarily inappropriate for summary judgment.

   2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

   3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

   4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

   5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Under the Eighth Amendment, prisoners have a right to medical care. The standard for deciding whether this right has been violated was stated as follows:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (citation and footnotes omitted).

These standards were explained further by the Supreme Court stating that the action must be characterized as "repugnant to the conscience of mankind." Id. Essentially, the same standard applies to pretrial detainees. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244-46 (1983). In the Sixth Circuit, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (citations omitted). Yet, "medical attention rendered may be so woefully inadequate as to amount to no treatment at all." Id. (citation omitted).

In Estelle, the prisoner had been examined on seventeen (17) occasions and the Supreme Court found that a failure to take an x-ray and to perform other diagnostic tests represented a claim for negligence. The Supreme Court made it clear that a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid Eighth Amendment claim:

> This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain.
>
> \* \* \*
>
> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be

> "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

429 U.S. at 105-06 (footnote omitted).

As it were with other Eighth Amendment claims, this claim likewise has objective and subjective components. Helling v. McKinney, 509 U.S. 25 (1993). The Court explained the objective and subjective factors for this Eighth Amendment claim:

> [W]ith respect to the objective factor, determining whether McKinney's conditions of confinement violate the Eighth Amendment requires **more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.**
>
> **On remand, the subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct, which may have changed considerably since the judgment of the Court of Appeals.** Indeed, the adoption of the smoking policy mentioned above will bear heavily on the inquiry into deliberate indifference. In this respect we note that at oral argument McKinney's counsel was of the view that depending on how the new policy was administered, it could be very difficult to demonstrate that prison authorities are ignoring the possible dangers posed by ETS. The inquiry into this factor also would be an appropriate vehicle to consider arguments regarding to the realities of prison administration.

Id. at 36-37 (emphasis added).

Here, the undisputed facts reflect that Plaintiff had a serious medical condition as evidenced by his dental surgery. Yet, Plaintiff's medical records do not reflect any deliberate indifference by

the Defendants.

Accordingly, the Court concludes that the Defendants' motion for summary judgment (Docket Entry No. 43) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 24th day of March, 2016.

_____
WILLIAM J. HAYNES, JR.
Senior United States District Judge